IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RUSSELL NIELSON, a/k/a RUSH KANE, KANEKID, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>DAIHEN, INC., d/b/a OTC DAIHEN, a North Carolina corporation,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br><br><br>Case No. 2:24-cv-00496-TS-DBP<br><br>Judge Ted Stewart |

This matter comes before the Court on Defendant, Daihen, Inc., d/b/a OTC Daihen ("Daihen"), Motion to Dismiss. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

Plaintiff, Russell Nielson, sues Defendant for claims arising from an alleged breach of contract. Plaintiff works as a professional in the field of welding and fabrication and is a social media influencer.[1] He also designs, manufactures, and sells his own line of products in addition to partnering with other brands to create paid advertisements and promotions for their products.[2] Defendant manufactures welding technology, including welding robots, manual welding tools, power sources, and other welding equipment.[3]

---

[1] Docket No. 1-2 ¶¶ 8–9.

[2] *Id.* ¶ 9.

[3] *Id.* ¶ 7.

In 2018, Michael Monnin, Defendant's General Manager of Sales and Marketing, approached Plaintiff about a potential partnership between Daihen and Plaintiff's company, Kane Industries.[4] On November 12, 2018, Mr. Monnin and Plaintiff entered into an oral agreement.[5] In this original agreement, Plaintiff promised he would do the following: participate in research and development for Defendant's DTX2200 machine by using it and attending regular meetings with the research and development team; endorse Defendant's brand and products on social media, including by posting weekly Instagram posts and stories; and participate in special marketing events by request.[6] In exchange, Defendant promised it would compensate Plaintiff in the amount of $4,600 per month for these services, plus $5,000 per day for Plaintiff's attendance at the special marketing events.[7] The parties agreed Plaintiff would perform the services for two years, from January 1, 2019, until January 1, 2021, at which time Defendant would disburse payment in a lump sum to Plaintiff.[8]

The Complaint alleges that Plaintiff fully performed his obligations but when he contacted Defendant about compensation, Mr. Monnin informed Plaintiff that Defendant was unable to pay him at that time.[9] Mr. Monnin proposed to extend the terms of the original agreement for an additional three years through January 2024.[10] Plaintiff agreed.

---

[4] *Id.* ¶¶ 11–12. Although the Complaint makes this statement, Plaintiff clarifies in his Response that Kane Industries was not created until October 2020. Docket No. 9, at 2.

[5] Docket No. 1-2 ¶ 13.

[6] *Id.* ¶ 14.

[7] *Id.* ¶ 16.

[8] *Id.* ¶¶ 15, 17.

[9] *Id.* ¶¶ 19–21.

[10] *Id.* ¶ 21.

The Complaint asserts that under the terms of the "extended agreement," Plaintiff agreed he would do the following: continue performing the same services as under the original agreement; assist with Defendant's launch of its updated machine, called the RKX220, as an official collaboration between the parties; and endorse the RKX220 machine upon its launch and promote it on his social media accounts.[11] Defendant agreed to continue to pay Plaintiff $4,600 per month for these services plus $5,000 per day for attendance at events and to pay him this amount and the original agreement amount on January 1, 2024.[12] Plaintiff alleges that he agreed to this extended agreement in large part due to Mr. Monnin's misrepresentations concerning the RKX220 machine.

Plaintiff alleges that although he fully performed his obligations under both agreements, Defendant failed to pay him in January 2024.[13] The only payment Defendant made to Plaintiff was in November 2023, in which Defendant paid Plaintiff $17,005.87 for his attendance at a marketing event.[14]

In January 2024, Chris Sharp, Defendant's new General Manager of Sales and Marketing represented to Plaintiff that Defendant would send Plaintiff a proposed payment schedule for the outstanding $286,000.00 due.[15] Defendant did not do so and Plaintiff continued to demand payment. Mr. Sharp again promised that Defendant would send a payment schedule in April

---

[11] *Id.* ¶ 22.

[12] *Id.*

[13] *Id.* ¶ 40.

[14] *Id.* ¶ 36.

[15] *Id.* ¶ 40. Plaintiff alleges that Defendant previously paid him $17,005.87 in November 2023 to compensate him for attendance at an event, but that this is the only payment he received from Defendant. *Id.* ¶ 36.

2024.[16] Plaintiff subsequently sent an invoice to Defendant for $165,250.00 representing a discounted rate for his services.[17] In May 2024, Mr. Sharp emailed Plaintiff denying the existence of any agreement between Defendant and Plaintiff and stating that Defendant would not compensate him.[18]

Plaintiff filed a complaint in Utah state court alleging breach of oral contract, breach of implied contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent misrepresentation. Defendant removed the suit to this Court in July 2024. In August 2024, Defendant filed this Motion to Dismiss under Fed. R. Civ P. 8(a), 9(b) and 12(b)(6).[19]

## II. LEGAL STANDARD

When evaluating a complaint under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[20] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[21] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[22] "A pleading that offers 'labels and

---

[16] *Id.* ¶ 42.

[17] *Id.* ¶ 45.

[18] *Id.* ¶ 47.

[19] Docket No. 6.

[20] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23]

## III. DISCUSSION

Defendant challenges the Complaint on five grounds: (1) standing, (2) statute of frauds, (3) lack of consideration, (4) failure to state a claim for quasi-contract claims, and (5) failure to state a claim for fraudulent misrepresentation. The Court will address each argument in turn below.

### A. Standing

Defendant asserts that Mr. Kane is not the proper plaintiff because the invoice he attached to the Complaint states that the $286,000.00 balance is due to "Kane Industries, LLC"[24] and not Mr. Kane.[25] Defendant argues that under the prudential standing doctrine, Plaintiff cannot raise Kane Industries, LLC's legal rights.[26]

"The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing which embodies self-imposed limits on the exercise of federal jurisdiction.'"[27]

"Under the prudential standing doctrine, a party may not rest its claims on the right of third parties where it cannot assert a valid right to relief of its own."[28] For example, under this

---

[23] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[24] Docket No. 1-2, at 23.

[25] Docket No. 6, at 4.

[26] *Id.*

[27] *Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).

[28] *Hill v. Warsewa*, 947 F.3d 1305, 1309–10 (10th Cir. 2020) (internal quotation marks and citation omitted).

doctrine, courts "routinely dismiss actions brought by shareholders that attempt to assert rights of the companies they own, unless the shareholders can show some personal interest in the dispute."[29]

Defendant argues that under Fed. R. Civ. P. 17, Plaintiff cannot sue in his own name because he is not the real party in interest.[30] Defendant further asserts that the Court should dismiss the case with prejudice for failure to file suit as Kane Industries.

Plaintiff is a real party in interest. The Complaint clearly alleges that Plaintiff, not Kane Industries, contracted with Defendant in 2018, and that the injuries suffered were to Plaintiff. As such, Plaintiff is not "rest[ing] his claim to relief on the legal rights or interests of third parties,"[31] but is instead "attempting to assert [his] own right to the benefit of the bargain."[32] While Kane Industries was registered as an entity in October 2020,[33] Plaintiff references a partnership between Kane Industries and Defendant in his Complaint,[34] and one of the invoices to Defendant is from Kane Industries, it is unclear whether, when making the extended agreement, Plaintiff was acting on behalf of himself or Kane Industries. Based on this lack of clarity regarding the extended agreement, the Court will allow Plaintiff leave to amend to join Kane Industries to the suit if Plaintiff determines it is necessary to do so.

---

[29] *Webster v. Freight*, No. 2:23-cv-00647, 2024 WL 1259396, at *2 (D. Utah Mar. 7, 2024) (citation omitted).

[30] Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").

[31] *Wilderness Soc'y*, 632 F.3d at 1168 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[32] *Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, No. 2:19-cv-00881-JNP-DAO, 2022 WL 1568923, at *8 n.8 (D. Utah May 18, 2022).

[33] Docket No. 9, at 2.

[34] Docket No. 1-2, ¶¶ 11–12.

Regardless, Defendant's request for dismissal with prejudice is not the appropriate remedy. Contrary to Defendant's request, Rule 17 of the Federal Rules of Civil Procedure provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Accordingly, the Court will not dismiss the action on this ground.

### B. Statute of Frauds

Defendant asserts that the statute of frauds bars the breach of contract claim.[35] The statute of frauds is an affirmative defense.[36] Affirmative defenses may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). However, it is well-settled that for dismissal on the basis of an affirmative defense, the facts establishing the defense must be clear from the face of the complaint.[37] Moreover, a plaintiff need not plead sufficient facts to anticipate and overcome an affirmative defense.[38]

Under Utah's statute of frauds, "every agreement that by its terms is not to be performed within one year from the making of the agreement" is "void unless the agreement, or some note

---

[35] Docket No. 6, at 5–7.

[36] Fed. R. Civ. P. 8(c); Utah R. Civ. P. 8(c).

[37] *See* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Pro.* § 1357 (4th ed. 2024) (collecting cases) ("As the case law makes clear, the complaint is also subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy. However, for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion.").

[38] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense.").

or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement."[39]

Defendant asserts that because the alleged oral contract could not be completed within the year, the action is barred by the statute of frauds. Courts are critical of the statute of frauds, especially the one-year provision, based on the view that that it "foster[s] more fraud than it prevents"[40] and arbitrarily excludes potentially meritorious claims.[41] Accordingly both federal and Utah state courts have uniformly adopted a narrowed application of the one-year clause.[42] "[T]he one-year clause applies only to contracts that are literally *incapable* of being performed within one year."[43] Illustrating this narrow approach, the Utah Supreme Court adopted the following statement from the Restatement of Contracts, "[t]he words 'cannot fully be performed' must be taken literally. The fact that performance within a year is entirely improbable or not expected by the parties, does not bring the contract within th[e] statute [of frauds]."[44]

Plaintiff argues that "[t]he Complaint does not even imply that Plaintiff would not have been entitled to compensation unless the acts were performed for a full three years"[45] and therefore, the agreement is not within the statute of frauds.

---

[39] Utah Code Ann. § 25-5-4(1)(a).

[40] *Pasquin v. Pasquin*, 1999 UT App 245, ¶ 15, 988 P.2d 1 (citing *C.R. Klewin, Inc. v. Flagship Props., Inc.*, 600 A.2d 772, 775–76 (Conn. 1991)).

[41] *Leon v. Kelly*, 618 F. Supp. 2d 1334, 1348 (D. N.M. 2008).

[42] *See Pasquin*, 1999 UT App 245, ¶¶ 15–17 (collecting cases); *Warner v. Texas & Pac. Ry. Co.*, 164 U.S. 418, 434 (1896).

[43] *Pasquin*, 1999 UT 245, ¶ 18.

[44] *Zion's Serv. Corp. v. Danielson*, 366 P.2d 982, 985 (Utah 1961).

[45] Docket No. 9, at 9.

To support its position that the agreement comes within the statute of frauds, Defendant cites to *Orlob v. Wasatch Medical Management*,[46] in which the parties entered into an oral agreement that bound them to a six-year commission period and a ten-year period of non-competition. There, the court determined that neither term was capable of performance within one year because first, "[i]f Orlob were to die, unlike the result in a lifetime employment contract, where the end of the life is the end of the contract, the contract would be discharged and not performed" and second, "if either party voluntarily discontinued the contract, that party would be in breach of contract."[47]

"Where the agreement can be performed within one year, though this be done by election of one of the parties to terminate, there can be no doubt but that the Statute of Frauds is not applicable."[48] The Complaint is silent as to whether Plaintiff would be in breach for voluntarily discontinuing the agreements. While Plaintiff agreed to perform the services, including weekly posts, for more than a year, on the face of the Complaint it is not clear that the terms would be literally incapable of being performed within one year. Accordingly, the Court finds that the face of the Complaint does not show that the contract claims are barred by the statute of frauds.

However, even if the statute of frauds applies, the Complaint contains allegations that could overcome the statute of frauds. The doctrine of part performance is one exception to the statute of frauds and requires the following showing:

> First, the oral contract and its terms must be clear and definite; second, the acts done in performance of the contract must be equally clear and definite; and third, the acts must be in reliance on the contract. Such acts in reliance must be such that (a) they would not have been performed had the contract not existed, and (b) the

---

[46] 2005 UT App 430, 124 P.3d 269.

[47] *Id.* ¶ 24.

[48] *Zion's Serv. Corp*, 366 P.2d at 985.

failure to perform on the part of the promisor would result in fraud on the performer who relied, since damages would be inadequate.[49]

The Complaint pleads that the oral agreements had clear and distinct terms. In the original agreement, Plaintiff promised to provide specific services in exchange for Defendant promising to pay specific amounts at a specific time. In the extended agreement, Plaintiff promised to provide the same services, plus additional, clearly outlined services in exchange for Defendant's promise to pay specific amounts at a specific time. As alleged in the Complaint, the oral contracts and acts done in performance were clear and definite. The Complaint also pleads that the acts were done in reliance of the contracts.[50]

Defendant takes issue with the third prong of the part performance exception and argues that Plaintiff fails to address that his actions would not have been performed had the contract not existed and accordingly, the Court should treat it as an "abandonment" of the argument.[51] On the face of the Complaint, there is no other readily explainable reason for Plaintiff's five years of performance other than the agreements between the parties. Further, Defendant fails to address how its alleged payment of $17,005.87 to Plaintiff in 2023 does not also amount to partial performance on its part.

Next, in certain circumstances, a party to an oral argument deemed void under the statute of frauds may enforce the oral agreements under the doctrine of promissory estoppel.[52] The doctrine of "promissory estoppel will bar the defense of the statute of frauds only when 'the acts and conduct of the promisor so clearly indicate that he does not intend to avail himself of the

---

[49] *Randall v. Tracy Collins Tr. Co.*, 305 P.2d 480, 484 (Utah 1956).

[50] Docket No. 1-2 ¶¶ 52–53, 82.

[51] Docket No. 10, at 5.

[52] *Fericks v. Lucy Ann Soffe Tr.,* 2004 UT 85, ¶ 14, 100 P.3d 1200.

statute that to permit him to do so would be to work a fraud upon the other party.'"[53] Here, it is alleged that Defendant offered Plaintiff an agreement that it knew would not be completed in one year. This indicates an intent not to invoke a statute of frauds defense, and allowing Defendant to invoke that defense would work a fraud on Plaintiff given Plaintiff's efforts to fulfill his end of the bargain.

Based on the foregoing, the Court finds that the Complaint pleads sufficient facts for the Court to apply an exception to the statute of frauds. On the face of the Complaint, Defendant's payment and Plaintiff's five years of rendered services are not readily explainable on grounds other than the parties' contracts. Further, by entering into contracts that could not be completed within one year, Defendant indicated that it did not intend to avail itself of this defense and could be estopped from enforcing the statute of frauds. Therefore, even if the statute of frauds applies, at this juncture, exceptions may bar enforcement, and accordingly, the Court will deny Defendant's Motion.

C. Consideration

Defendant states that the Complaint fails to describe consideration, only a "series of supposed promises to pay in the future."[54] This argument is entirely without merit. As most first semester law students learn, "[f]or the mutual promises of the parties to a bilateral contract to constitute the consideration for each other, the promises must be binding on both parties."[55] "It is not necessary for a promisee to make payment in order for there to be consideration; the return

---

[53] *Stangl v. Ernst Home Ctr., Inc.*, 948 P.2d 356, 361 (Utah Ct. App. 1997) (quoting *Easton v. Wycoff*, 295 P.2d 332, 335 (Utah 1956)).

[54] Docket No. 6, at 7.

[55] *Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1036 (Utah 1985) (citations omitted).

promise to pay [is] sufficient to form the contract."[56] The allegations that Defendant promised to pay Plaintiff for his services are sufficient to constitute consideration.

Defendant next asserts that the promise to make payment in 2024 after defaulting on the prior promise to pay in 2021 lacks consideration.[57] This ignores the terms of the 2021 agreement as alleged in the Complaint. First, Defendant seems to suggest that the Court should assess whether there was consideration for the first agreement after payment was due and Defendant could not pay. This is a deeply flawed argument. Consideration is determined at contract formation and as discussed above, the Complaint pleads that there was consideration when the parties made the 2019–2021 agreement. Next, to the extent that Defendant is arguing that its promise to defer payment and extend the term of Plaintiff's services lacks consideration, this argument also fails. Not only does the agreement in 2021 extend the term of services for three years, it also includes new terms not included in the original agreement and a promise from Defendant to pay Plaintiff for the services rendered from 2021 to 2024. Accordingly, the Court denies the Motion as the Complaint pleads consideration.

---

[56] *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 91 (Utah 1988) (quoting *Bank of Wallowa Cnty. v. Gary Mac, Inc.*, 619 P.2d 1310, 1314 (Or. Ct. App. 1980)).

[57] Docket No. 10, at 5.

D. Quasi-contract claims

Defendant next argues that the Complaint fails to state quasi-contract claims for unjust enrichment and promissory estoppel.[58]

First, Defendant asserts that Plaintiff cannot allege facts establishing promissory estoppel because the Complaint does not allege that both parties believe there was a binding agreement to pay.

To state a claim for promissory estoppel, a Complaint must plead "(1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person."[59] Here, the Complaint pleads that Defendant promised to pay for Plaintiff's services, Plaintiff reasonably relied on Defendant's promises and took action to that effect, and Plaintiff suffered detriment by providing services to Defendant for five years without payment.[60] Accordingly, the Complaint states a plausible claim for promissory estoppel.

Turning to the unjust enrichment claim, Defendant seems to assert that the claim fails because Plaintiff did not confer a benefit on Defendant.[61] To state a claim for unjust enrichment, a complaint must plead "'(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of

---

[58] The Complaint also pleads a quasi-contract claim for implied contract. Defendant does not challenge or substantively address the claim. Accordingly, the Court will not address the claim here.

[59] *Cottonwood Imp. Dist. v. Qwest Corp.*, 2013 UT App 24, ¶ 3, 296 P.3d 754 (quoting *Weese v. Davis Cnty. Comm'n*, 834 P.2d 1, 4 n.17 (Utah 1992)).

[60] Docket No. 1-2 ¶¶ 79–83.

[61] Docket No. 6, at 9.

13

the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.'"[62]

The Complaint pleads the following: Plaintiff conferred a benefit on Defendant by performing services over the course of five years; the services performed were worth a fair market value of approximately $286,000; Defendant was aware of the benefit and accepted, enjoyed, and appreciated the benefit; and because Defendant was aware and accepted the benefit of Plaintiff's services, the circumstances make it inequitable unless Plaintiff is reasonably compensated.[63] Therefore, the Complaint sufficiently pleads that Plaintiff conferred a benefit on Defendant and pleads a plausible claim for unjust enrichment.

Defendant also appears to argue that Plaintiff cannot bring quasi-contract claims because there is a contract.[64] It is true that an express contract precludes equitable remedies,[65] however, Defendant also argues elsewhere that there is no contract. Furthermore, as discussed below, Plaintiff pleads his quasi-contract claims in the alternative. The Court therefore does not find this argument persuasive.

Finally, Defendant argues that Plaintiff did not plead his claims for unjust enrichment and promissory estoppel in the alternative and therefore, the claims should be dismissed with

---

[62] *Combs v. SafeMoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, at *34 (D. Utah Mar. 29, 2024) (quoting *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279).

[63] Docket No. 1-2 ¶¶ 72–77.

[64] Docket No. 6, at 8.

[65] *See Thatcher v. Lang*, 2020 UT App 38, ¶ 41, 462 P.3d 397 (holding that when a contract governing the subject matter exists and is enforceable, even where it does not provide an express remedy, equitable remedies are not available).

14

prejudice.[66] This ignores clear case law, including the case law that Defendant cites to in its Motion.[67]

"A party may state as many separate claims or defenses as it has regardless of consistency."[68] A plaintiff "need not use particular words to plead in the alternative," but "they must use a formulation from which it can be reasonably inferred that this is what they are doing."[69] Based on the nature of the claims alleged under contract and quasi-contract theories, it can be reasonably inferred from the Complaint that the claims for implied contract, unjust enrichment, and promissory estoppel are pled in the alternative to the contract claim. However, if Plaintiff would like to amend his Complaint to explicitly plead these claims in the alternative, the Court will give him leave to do so as the remedy in this situation is not dismissal with prejudice as Defendant asserts, but rather an opportunity for Plaintiff to amend.[70]

The Court will therefore deny the Motion as to the quasi-contract claims.

E. Fraudulent Misrepresentation

Defendant argues that Plaintiff's fraudulent misrepresentation claim fails because it lacks particularity, lacks allegations to support the elements of the claim, and is barred by the economic loss rule.[71] The Court will address each argument in turn below.

---

[66] Docket No. 6, at 10.

[67] *Id.* at 10 n.3 (citing *MC Oil & Gas LLC v. Ultra Res., Inc.*, No. 1:15-cv-0038, 2015 WL 2452923, at *2 (D. Utah May 22, 2015)).

[68] Fed. R. Civ. P. 8(d)(3).

[69] *MC Oil & Gas LLC*, 2015 WL 2452923, at *2 (citation omitted).

[70] *See id.* ("[B]ecause [the plaintiff] stated in its [o]pposition that it intended to make . . . an alternative pleading, the . . . estoppel claim is dismissed with leave for [plaintiff] to amend only to add that it is stated in the alternative.")

[71] Docket No. 6, at 10–13.

Defendant asserts that the fraudulent misrepresentation claim is insufficient to meet the Fed. R. Civ. P. 9(b) pleading standard and also fails to allege facts to support elements under the claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[72] "The Tenth Circuit 'requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[73]

> To assert a claim for fraudulent misrepresentation, a Complaint must plead
>
> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representator either *(a) knew to be false, or (b) made recklessly*, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[74]

Defendant asserts that the Complaint fails to satisfy Rule 9(b)'s specificity with respect to Mr. Monnin's oral representations about the RKX220 machine by failing to plead where or when the representations were made, who said them, and the manner in which the representations were made.[75]

The Complaint alleges that in January 2021, Mr. Monnin represented to Plaintiff that Defendant would not make any significant changes to the RKX220 machine (formerly known as the DTX2200 machine) without Plaintiff's consent, and that the machine would be the same

---

[72] Fed. R. Civ. P. 9(b).

[73] *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-cv-00512, 2021 WL 409785, at *4 (D. Utah Feb. 5, 2021) (quoting *Parrish v. Arvest Bank*, 717 F. App'x 756, 760 (10th Cir. 2017)); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir 2000).

[74] *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 12, 21 P.3d 219 (alteration in original) (citation omitted).

[75] Docket No. 6, at 12.

machine he spent two years developing with the research and development team.[76] Plaintiff alleges that Defendant knew this statement was false as Plaintiff later learned that Defendant replaced a component of the machine with a lower-cost part, rendering many machines defective.[77] He alleges this statement was material in his decision to enter into the extended agreement and that he relied on it and was induced to act by agreeing to the extended agreement.[78] Based on these allegations, the Court finds that the Complaint meets Rule 9(b) pleading standards.

Turning to the elements of fraudulent misrepresentation, Plaintiff pleads that Defendant made a representation about the RKX220 machine that was material to his decision to enter into the agreement. The Complaint further pleads that this was a false statement based upon Plaintiff's discovery in March 2024, that a component of the machine was replaced without his approval. Next, he alleges that Defendant knew this was false when it was made and the statement was made for the purposing of inducing Plaintiff to enter into the extended agreement with Defendant. Finally, the Complaint pleads that Plaintiff acted reasonably and in ignorance of the statements when he relied on the statements and entered into the extended agreement resulting in damages to his reputation by promoting and collaborating on a defective product.

Defendant argues that the Complaint fails to plead reasonable reliance. It cites to *Donner v. Nicklaus*.[79] There, the Tenth Circuit explained that, "[t]o determine whether reliance is

---

[76] Docket No. 1-2 ¶ 85.

[77] *Id.* ¶¶ 86, 90.

[78] *Id.* ¶¶ 87, 91–93.

[79] 778 F.3d 857 (10th Cir. 2015); *see* Docket No. 6, at 12.

reasonable, courts consider the facts."[80] The court concluded that where the complaint "did not include any facts that would have made [the plaintiff's] reliance *unreasonable* . . . [the plaintiff's] pleading of reasonable reliance [was] sufficient."[81]

Similarly, here, the Complaint does not allege any facts making Plaintiff's reliance on the representations unreasonable. The remaining cases Defendant cites to involve courts applying a summary judgment or directed verdict standard,[82] and includes at least one citation to a case applying a standard from a different area of law.[83] The Court therefore, finds that the Complaint sufficiently pleads reasonable reliance.

Defendant also argues that a misrepresentation of intended future performance is not a presently existing fact and that an alleged oral promise to pay in the future cannot satisfy this element.[84] However, as discussed above, the Complaint bases its fraudulent misrepresentation claim on representations concerning the RKX220 machine, not any promise to pay. Accordingly, the Court rejects this argument.

Defendant asserts for the first time in its Reply that Plaintiff cannot claim reasonable reliance because he became aware of the falsity of the representations and continued to perform.

---

[80] *Donner*, 778 F.3d at 870 (citation omitted).

[81] *Id.* (emphasis added).

[82] *See* Docket No. 6, at 12 n.4.

[83] *Id.* (citing *Maack v. Res. Design & Constr., Inc.*, 875 P.2d 570, 577 (Utah Ct. App. 1994) ("Fraud as related to purchase of real estate may not be predicated on alleged false statements the truth of which could have been ascertained with reasonable diligence by the party asserting their falsity.") (internal quotation marks and citation omitted); *but see Donner*, 778 F.3d at 870 ("In Utah, plaintiffs may accept representations without investigation unless facts should make it apparent that they are being deceived.") (internal quotation marks and citations omitted).

[84] Docket No. 6, at 13.

This argument was not timely raised.[85] However, even if it was, the Complaint alleges that although Plaintiff became suspicious during the term and sought to fix issues with the machine, he was not able to confirm until March 2024 that the component was different.[86] Accordingly, this argument is not persuasive. Defendant also argues for the first time in its Reply that the Complaint does not allege facts to establish that Monnin knew the representations were false when he made them. However, the Complaint alleges that Defendant knew the representations were false.[87] This is sufficient under the applicable pleading standard.

Finally, Defendant argues that the fraudulent inducement claim overlaps completely with the breach of contract claim and is therefore barred by the economic loss rule.[88] "The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute.'"[89] "Therefore, when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon."[90] When a contract exists, any tort claim must be based on a duty independent of the contract and the economic loss rule does not bar a party from bringing a tort claim based on the independent duty.[91]

---

[85] *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (reaffirming that the court need not "consider arguments raised for the first time in a reply brief") (citation omitted).

[86] Docket No. 9, at 3.

[87] Docket No. 1-2 ¶ 90.

[88] Docket No. 6, at 10–11.

[89] *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168.

[90] *Chinitz v. Ally Bank,* No. 2:19-cv-00059, 2020 WL 1692817, at *4 (D. Utah Apr. 7, 2020) (internal quotation marks and citation omitted).

[91] *Id.*

Under the economic loss rule, "'the initial inquiry' is 'whether a duty exists independent of any contractual obligations between the parties.'"[92] "If the duty emanates from bargains, it is within the ambit of contract law. If the duty emanates from the interdependent nature of human society, it is governed by tort principles."[93]

The situation here is unique compared to many of the cases cited to by the parties. First, the alleged contracts are oral, not written, and second, Defendant argues that the contracts do not exist or are invalid for a number of reasons. At this juncture it appears that the fraudulent inducement claim, as pled in the Complaint, does not come from a duty arising from the alleged contracts, as the contract terms do not appear to involve a warranty or promise regarding the quality or specifications of the RKX220 machine. However, "[a]t this stage of the proceedings the Court must view all factual allegations in the light most favorable to the Plaintiff."[94] "Moreover, the arguments made by the parties with regard to an independent duty and the economic loss rule hinge upon issues of fact that may not be appropriately resolved at this point."[95] Accordingly, the Court does not find that the economic loss rule bars the fraudulent misrepresentation claim.

---

[92] *Preventive Energy Sols., LLC v. nCap Ventures 5, LLC*, No. 21-4099, 2023 WL 7148434, at *8 (Oct. 31, 2023 10th Cir.) (quoting *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 27 221 P.3d 234).

[93] *Id.* (quoting *Reighard*, 2012 UT 45, ¶ 19) (internal quotation marks omitted).

[94] *Clearone Commc'ns, Inc. v. JAS Forwarding*, No. 2:09-CV-450-TS, 2009 WL 3248120, at *4 (D. Utah Oct. 7, 2009) (denying a motion to dismiss).

[95] *Id.*

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 6) is DENIED; It is further

ORDERED that Plaintiff may amend the Complaint as outlined above within fourteen

(14) days of this Order.

DATED  February 3, 2025.

BY THE COURT:

_____

TED STEWART
United States District Judge